**Charles FRYAR, Jr.,**

v.

**Lynn BISSONETTE, Superintendent, North Central Correctional Center**

**No. CIV.A. 98–30215–MAP.**

United States District Court, D. Massachusetts.

Feb. 5, 2002.

David P. Hoose, Katz, Sasson & Hoose, Springfield, Harris Freeman, Northampton, MA, for Charles Fryar, Jr., Petitioner.

Cathryn A. Neaves, Attorney General's Office, Catherine E. Sullivan, Assistant Attorney General, Boston, MA, for Lynn Bissonnette, Superintendent, North Central Correctional Center, Respondent.

## MEMORANDUM REGARDING PETITIONER'S REQUEST FOR A WRIT OF HABEAS CORPUS

(Docket No. 1)

PONSOR, District Judge.

### I.  INTRODUCTION

Petitioner, Charles Fryar, Jr. ("petitioner") moves for a writ of habeas corpus under 28 U.S.C. § 2254(d).  He argues that a state court's evidentiary ruling, forbidding a prosecution witness' out-of-court exculpatory confession from being considered substantively, violated his Sixth and Fourteenth Amendment rights under the United States Constitution.  For the reasons discussed below, petitioner's motion will be denied.

## II. *FACTUAL AND PROCEDURAL BACKGROUND*

Early in the morning on April 14, 1989, a fight broke out between four African–American high school students and several white young men in downtown Springfield. In the course of the altercation, a white student, Eric Palmer ("Palmer"), was stabbed to death. Although there were no eyewitness, Petitioner (according to the prosecution) confessed to the stabbing around 10:30 the next morning while in police custody. *See Commonwealth v. Fryar*, 414 Mass. 732, 733–735, 610 N.E.2d 903 (1993).

Petitioner was indicted on May 10, 1989, and tried for the first time beginning March 14, 1990. The conviction in the first trial was overturned by the Supreme Judicial Court of Massachusetts (the "SJC") on April 7, 1993 due to racial discrimination in the selection of the petit jury. *See Commonwealth v. Fryar*, 414 Mass. 732, 733, 610 N.E.2d 903 (1993). The second trial commenced on January 13, 1994. At this trial, Petitioner's main defense was that a prosecution witness, Thomas Barklow ("Barklow"), was the real killer and had in fact privately confessed to the crime himself. (Docket 1).

To further this defense, Petitioner's counsel cross-examined Barklow extensively about his alleged confession.[1] Barklow denied confessing to the murder. Then, Petitioner called Jason Franklin ("Franklin") to the stand. Franklin testified that five months earlier, while Barklow was living with him, Barklow had confessed to murdering Palmer. Barklow, Franklin said, had provided details about the murder and added that "it was quick and easy." In addition, Franklin testified that

Barklow was proficient with a butterfly knife, the type of weapon that was used to kill Palmer. (Docket 1 at 5–7).

Petitioner moved to have Barklow's out-of-court statements to Franklin admitted as substantive evidence tending to show that Barklow, not petitioner, was Palmer's killer. The trial judge demurred, and instructed the jury that Barklow's statements, as reported by Franklin, could be considered only for purposes of impeaching Barklow. The judge made this decision for two reasons. *First*, Barklow had testified and was not "unavailable," as required by the Massachusetts version of the "declaration against interest" exception to the hearsay rule. *Second*, the judge found that Barklow's statement as reported by Franklin was not corroborated by circumstances clearly indicating its truthfulness. The judge noted on the record that "there are some serious questions the Court has with respect to the trustworthiness [of this] information, [coming] almost four or five years after the alleged incident." (Docket 6, Exhibit 7). That ruling—permitting the jury to consider the alleged out-of-court statement only on the issue of Barklow's credibility, and not substantively as evidence that Barklow was the killer—is the basis for this petition.

Petitioner was convicted on January 25, 1994, of second-degree murder and two counts of assault and battery with a dangerous weapon. He was sentenced to life imprisonment, and to lesser concurrent terms that have already been served. The petitioner's application for direct appellate review with the SJC was granted, and his conviction was affirmed on June 13, 1997. *See Commonwealth v. Fryar*, 425 Mass. 237, 249–250, 680 N.E.2d 901 (1997). His

---

**1.** Barklow was called as a witness by the Commonwealth at petitioner's trial. He was present at the April 14, 1989 altercation and identified petitioner as the one who stabbed

Palmer. The evidence showed that Barklow and petitioner were similar in appearance. *Fryar v. Bissonnette*, 113 F.Supp.2d 175, 177 (D.Mass.2000).

petition for a writ of certiorari with the Supreme Court was filed November 3, 1997, and denied December 15, 1997. *See Fryar v. Massachusetts*, 522 U.S. 1033, 118 S.Ct. 636, 139 L.Ed.2d 615 (1997).

The petition for a writ of habeas corpus was filed November 9, 1998. On November 5, 1999, petitioner filed a motion for an evidentiary hearing. This court denied that motion on September 19, 2000. *See Fryar v. Bissonnette*, 113 F.Supp.2d 175 (D.Mass.2000). The petition argues that the trial court's decision to admit Barklow's confession only for impeachment purposes violated petitioner's due process and Sixth Amendment right to present a meaningful defense under *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).

## III. *DISCUSSION*

### A. *Procedural Stance*

■ This petition is somewhat unusual as a procedural matter, because it will be reviewed *de novo*. A recent decision in the First Circuit has made it clear that "AEDPA's strict standard of review only applies to a 'claim that was adjudicated on the merits in state court proceedings.'" *Fortini v. Murphy*, 257 F.3d 39, 47 (1st Cir.2001), quoting 28 U.S.C. § 2254(d). Accordingly, when a federal claim is properly presented to the state appellate court but not addressed by that court, the unreviewed federal claim must be considered *de novo* by the reviewing federal court. *Id. See also DiBenedetto v. Hall*, 272 F.3d 1, 7 (1st Cir.2001)(same); *Brown v. Maloney*, 267 F.3d 36, 40 (1st Cir.2001) (same); *Cochran v. Merrill*, 2001 WL 883639, *6 (D.Me. August 3, 2001) (same). A court "can hardly defer to the state court on an issue that the state court did not address." 257 F.3d at 47.

To pursue a petition for *habeas corpus*, petitioner must first have properly presented his claim to the SJC, or "exhausted" it. "Exhaustion requires that a petitioner have 'fairly presented to the state courts' his constitutional claim," *id.* at 44, "in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question." *Scarpa v. DuBois*, 38 F.3d 1, 6 (1st Cir.1994). "[S]pecific constitutional language, constitutional citation, [or] appropriate federal precedent ..." will satisfy this requirement. *Nadworny v. Fair*, 872 F.2d 1093, 1101 (1st Cir.1989).

■ Petitioner's brief to the SJC cited *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), several times in reference to the Barklow confession, and argued that his right to have the confession admitted was "guaranteed by the due process clause of the Fourteenth Amendment." *See* Docket 6, Exhibit 2 at 33–37. Thus, petitioner properly presented his federal claim to the SJC, and exhausted his state remedies.

■ In its decision, the Supreme Judicial Court did not specifically address petitioner's claim under the federal constitution. It might be argued that, by addressing petitioner's argument under Article 12 of the Massachusetts Constitution, the SJC intended, in effect, to kill two birds with one stone. In his brief to the SJC, petitioner did describe Article 12 as "often more protective of federal defendants than related federal constitutional provisions." Docket 6, Exhibit 2 at 36. Thus, the SJC may have believed that by finding that the limiting instruction did not violate Article 12, it also disposed of the federal issue. *See* Docket 6, Exhibit 7.

■■ However, the principles reflected in the rule of lenity favor interpreting the

ambiguity in the SJC opinion in Petitioner's favor. *See, e.g., Staples v. United States,* 511 U.S. 600, 619, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994). AEDPA imposes very rigorous standards of review on habeas petitions because of the presumption that the petitioner's collateral claims have already been reviewed explicitly on direct appeal. *See Fortini,* 257 F.3d at 47. Therefore, when the state appellate opinion is ambiguous as to whether it addressed the federal claim, the federal claim should be reviewed *de novo. See Hurtado v. Tucker,* 245 F.3d 7, 18 n. 18 (1st Cir. 2001) ("A total failure by the state court to discuss any constitutional claim may mean that there was no such claim 'adjudicated on the merits in State court proceedings.' ").[2]

### B. *Analysis*

This case presents a simple constitutional question: Does the Sixth Amendment forbid excluding an out-of-court exculpatory confession as substantive evidence because the declarant was available at trial and cross-examined about the out-of-court confession? The following analysis will be limited to this question, and for purposes of this discussion, it will be assumed that Barklow's alleged out-of-court confession exhibited sufficient indicia of reliability to make it admissible and was (if believed) exculpatory.[3]

### 1. *Chambers v. Mississippi*

Petitioner bases his argument on *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). According to petitioner, *Chambers* stands for the proposition that under the Sixth Amendment, a reliable exculpatory out-of-court confession must be admitted substantively, regardless of whether the declarant is available.

In *Chambers,* the defendant was charged with a murder that another person, one Gable McDonald ("McDonald"), had repeatedly confessed to. *Id.* at 290, 93 S.Ct. 1038. When the prosecution refused to call McDonald as a witness, the defendant was forced to call him. However, the defendant was powerless to counter McDonald's testimony that he did not commit the murder. Because the defendant called McDonald, a Mississippi procedural rule prevented the defendant from cross-examining him. *Id.* at 291–292, 93 S.Ct. 1038. In addition, at the time, Mississippi did not recognize an exception to the hearsay rule for statements against penal interest. As a result, the defendant could not call witnesses to impeach McDonald with McDonald's own out-of-court statements. *Id.* at 293, 93 S.Ct. 1038. The Court found that the defendant's inability to cross-examine McDonald violated his Sixth Amendment right of cross-examination. *Id.* at 295, 93 S.Ct. 1038. It also found that the defendant's inability to call witnesses to impeach McDonald violated his Sixth Amendment right to present wit-

---

**2.** Note that in this situation a state court's factual determinations, even though they relate only to an independent state claim, are still entitled to the presumption set forth in AEDPA. *See DiBenedetto v. Hall,* 272 F.3d 1, 7 n. 1 (1st Cir.2001). Thus, if it had been disputed, the finding that Barklow was not "unavailable" would have been given AEDPA-style deference by this court.

**3.** These assumptions appear well-grounded. Petitioner presents strong arguments suggest-

ing that the trial court's finding that the statement was unreliable was in error. As Petitioner points out, the trial court seems improperly to have focused on the reliability of the circumstances in which the statement was repeated by Franklin, rather than the circumstances in which the alleged statement was made by Barklow. In addition, since this court has denied Petitioner's motion for an evidentiary hearing, an analysis based on these assumptions is fairest to Petitioner.

nesses in his own behalf. *Id.* at 302, 93 S.Ct. 1038. Together, the violations of these rights denied the defendant "a trial in accord with traditional and fundamental standards of due process." *Id.* The Court made this ruling despite the fact that the trial judge's evidentiary rulings were entirely consistent with Mississippi law at the time.

Petitioner claims that his situation is "practically identical to the *Chambers* scenario." (Docket 36 at 23). It is true that the cases are similar from some vantage points. Both involve out-of-court exculpatory confessions made under circumstances of reliability. On closer examination, however, substantial differences between *Chambers* and this case emerge.

In *Chambers,* two specific constitutional rights were at stake: the right to cross-examination and the right to present witnesses. The Sixth Amendment mentions both rights:

> In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor ....

In this case, unlike *Chambers,* neither the right to cross-examination nor the right to present witnesses was compromised. Instead, petitioner charges a violation of a more amorphous "right to present a meaningful defense," a less defined entitlement only obliquely addressed by the Sixth Amendment. Thus, *Chambers* is not controlling.

■ The "right to present a meaningful defense" is subject to limits. It is well-established, for example, that " '[a] defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions,' ... and evidentiary exclusions will not violate the constitution 'so long as they are not arbitrary or dis-

proportionate to the purposes they are designed to serve.' " *DiBenedetto v. Hall,* 272 F.3d 1, 8 (1st Cir.2001), quoting *United States v. Scheffer,* 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998)(internal quotation omitted). As will be seen, the state trial judge's ruling was neither "arbitrary" nor "disproportionate" and did not undercut the fairness of the trial in any significant way.

### 2. *Hearsay and Unavailability*

■ Federal Rule of Evidence 804 and its Massachusetts counterpart are clear. Under both rules, the "statement against interest" exception to the hearsay rule does not apply if the declarant is available to testify. FED.R.EVID. 804(b)(3); *Commonwealth v. Fryar,* 425 Mass. 237, 250, 680 N.E.2d 901 (1997). In this case, Barklow not only testified, but was cross-examined rigorously about his alleged confession. In addition, petitioner was permitted to call Franklin and to introduce his recollection of Barklow's confession for impeachment purposes. Thus, both federal and state evidentiary rules facially supported the trial court's ruling.

### a. *The Residual Exception*

Petitioner does not argue, at least not directly, that Rule 804 is unconstitutional. The difference, as petitioner sees it, between Rule 804 and its Massachusetts counterpart is that Rule 804 is balanced by Rule 807, the "residual exception" to the hearsay rule. Massachusetts has no such safety valve. According to petitioner, without the supplementation of the residual exception, Rule 804 does not pass constitutional muster as applied in petitioner's trial.

■ The problem with this argument is that Barklow's confession was not admissible under the residual exception. *See* FED.

R.EVID. 803(24) advisory committee's note (1974)("It is intended that the residual hearsay exceptions will be used very rarely, and only in exceptional circumstances."). Two features of Rule 807 make this conclusion unavoidable.

First, Rule 807 applies only to those statements "not specifically covered by Rule 803 or 804." Barklow's out-of-court statement is virtually a prototype of a Rule 804(b)(3) "statement against interest." Barklow's confession is,

> a statement which was at the time of its making . . . so far tended to subject the declarant to . . . criminal liability . . . that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.

FED.R.EVID. 804(b)(3). It is even more obviously "[a] statement tending to expose the declarant to criminal liability and offered to exculpate the accused," which is also specifically treated by Rule 804(b)(3). Thus, Rule 807 does not apply to Barklow's confession.

■ Second, a necessary condition for admission under Rule 807 is that "the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts." FED.R.EVID. 807. In this case, through no effort at all, petitioner could get evidence about whether Barklow committed the murder straight from Barklow's mouth. Barklow's out-of-court statement was not more probative on the point of whether Barklow committed the murder, or had confessed to it, than Barklow's own in-court testimony. Thus, given the lack of applicability of Rule 807, petitioner must prove that the unavailability requirement of Rule 804(b)(3) is unconstitutional, at least as applied at his trial, if he is to prevail on his petition.

b. *The Constitutionality of Rule 804(b)(3)*

The broad scope of petitioner's argument can be seen by examining the essence of his claim. Barklow testified at trial, essentially, that "I did not confess." Franklin testified at trial that Barklow had told him, in effect, "I confess." The issue before the trial court, and now before this court, is what evidentiary status Barklow's out-of-court statement, "I confess," should have been given.

According to petitioner, it was not enough that the confession was admitted to attack the credibility of Barklow and his statement at trial that "I did not confess." According to petitioner, the Constitution demanded that Barklow's out-of-court statement be treated as *substantive* evidence. Barklow's out-of-court confession should *not* have been diminished to mere credibility evidence simply because Barklow said at trial that he had never made the confession.

This argument attacks a bedrock principle of evidence law: the preference for testimony given on the stand over hearsay. As the Advisory Committee notes, "[t]he rule expresses preferences: testimony given on the stand is preferred over hearsay, and hearsay, if of the specified quality, is preferred over complete loss of evidence of the declarant." FED.R.EVID. 804(b) advisory committee's note (1972). While petitioner in this case may prefer hearsay to in-court testimony, it is perhaps ironic that the Confrontation Clause usually protects defendants against hearsay statements. As the Supreme Court has noted,

> Confrontation: (1) insures that the witness will give his statements under oath—thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the

greatest legal engine ever invented for the discovery of truth; (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility.

*California v. Green,* 399 U.S. 149, 158, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970) (quotation omitted).

█ Thus, live testimony, under oath, subject to cross-examination, is preferred by the Constitution itself as the best means of gathering evidence in criminal trials.[4] *Cf. U.S. v. Scheffer,* 523 U.S. 303, 313, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998) (noting that "[a] fundamental premise of our criminal trial system is that the jury is the lie detector.") (quotation omitted). The preference for testimony on the stand over hearsay, embodied in Rule 804(b)(3), therefore, cannot be unconstitutional. Petitioner vigorously cross-examined Barklow about the alleged confession, impeached Barklow through Franklin's testimony about the confession, and argued to the jury that Barklow's denial of

---

4. Of course, the Confrontation Clause does not *require* the substantive exclusion of Barklow's hearsay statement. *See Green,* 399 U.S. at 161, 90 S.Ct. 1930. The Confrontation Clause has nothing directly to say about the issue. Rather, that Clause's emphasis on testimony on the stand highlights the permissibility of Rule 804(b)(3)'s unavailability requirement.

5. A strong argument could be made that, even if the trial judge's limiting instruction was incorrect, the error was harmless. *See Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)(outlining harmless error standards on collateral review for "trial error" and "constitutional error"). It is almost impossible to imagine that any jury could (a) find petitioner guilty of the murder beyond a reasonable doubt, and (b) simultaneously believe that Barklow had lied when he denied confessing to the same murder. In the particular circumstances of this case, the

any confession lacked credibility. The Sixth Amendment requires no more.[5]

## IV. CONCLUSION

For the aforementioned reasons, petitioner's motion for a writ of habeas corpus is hereby DENIED.

A separate order will issue.

## ORDER

For the reasons stated in the accompanying Memorandum, petitioner's request for a writ of habeas corpus is DENIED. The clerk will enter judgment for the defendant.

substantive and impeachment applications of the evidence drift into each other so far that, as a practical matter, they almost overlap entirely. It is very hard to discern how the impeachment/substantive distinction could really have made a difference.

A jury who, in fact, believed that Barklow lied when he testified that he had never told Franklin that he had committed the murder, might perhaps still have convicted Petitioner of killing Palmer, if it believed that Barklow's "confession" was itself simply false bravado, designed for example to impress or intimidate Franklin, and that petitioner was the real killer. But, again, the jury would be free to draw this conclusion, or decline to draw it, whether it viewed Franklin's testimony substantively or only for impeachment purposes.

In any event, because the petitioner's argument lacks any constitutional support it is not necessary to address the question of harmless error.