# United States Court of Appeals
## For the First Circuit

---

No. 02-1246

CHARLES FRYAR, JR.,

Petitioner, Appellant,

v.

LYNN BISSONNETTE,

Respondent, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

---

Before

Lynch, Circuit Judge,
Stahl, Senior Circuit Judge,
and Howard, Circuit Judge.

---

David Hoose, with whom Katz, Sasson, Hoose & Turnbull and Harris Freeman were on brief, for the appellant.
Cathryn A. Neaves, Assistant Attorney General, with whom Thomas F. Reilly, Attorney General, was on brief, for appellee.

---

February 5, 2003

---

**HOWARD**, **Circuit Judge**.  Petitioner-appellant Charles Fryar, Jr. ("Fryar") appeals from the district court's order denying his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He argues that an evidentiary ruling at his state court trial was a prejudicial violation of his Sixth and Fourteenth Amendment rights, invoking Chambers v. Mississippi, 410 U.S. 284, 303 (1973) ("[W]here constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice.").  We disagree and accordingly affirm.

## I.  BACKGROUND

As the district court has meticulously set forth the factual and procedural history of this case in a published opinion, Fryar v. Bissonette, 185 F. Supp. 2d 87, 89-91 (2002) ("Fryar III"), only a brief summary is necessary here.

Early on the morning of April 14, 1989, a fight broke out on the streets of downtown Springfield, Massachusetts, between four black high school students and a group of white college students.  During the brawl, one of the college students, Eric Palmer, was stabbed to death.  Fryar was arrested, and while in police custody ultimately confessed to the stabbing.  Fryar has since repudiated this confession, and maintains that another of the youths, Thomas Barklow ("Barklow"), was in fact responsible.

-2-

Fryar was indicted on May 10, 1989, and on April 3, 1990, was convicted of first-degree murder and two counts of assault and battery. On appeal, the conviction resulting from this trial was overturned by the Supreme Judicial Court of Massachusetts ("SJC") on April 7, 1993, due to racial discrimination in the selection of the petit jury. Commonwealth v. Fryar, 414 Mass. 732, 733 (1993) ("Fryar I"). The second trial, which is the subject of Fryar's petition, began on January 13, 1994.

At the second trial, Fryar presented evidence consistent with his claims of innocence - specifically, that Barklow was the real killer and had confessed to the crime under reliable circumstances. Fryar sought to include mention of Barklow's confession in his opening statement, arguing an entitlement to do so under Chambers. The trial court denied this request, basing its ruling exclusively on state evidentiary law principles and without reference to Fryar's Chambers argument. Barklow was ultimately called as a witness for the prosecution, at which point Fryar was able to subject him to vigorous cross-examination regarding the confession and his involvement in the crime. At all times during the trial, Barklow denied having committed or confessed to the murder.

Immediately following Barklow's testimony and the conclusion of the prosecution's case-in-chief, Fryar called Jason Franklin ("Franklin") to the stand. Franklin testified that

Barklow had, in fact, confessed to the murder in his presence five months earlier, while Barklow was living with Franklin's family. Franklin testified that Barklow had provided details about the murder, and had stated that it "was real quick and easy." Franklin also testified that Barklow was proficient with a butterfly knife, the kind of knife used in the stabbing.

Fryar moved to have Barklow's out-of-court statements to Franklin admitted as substantive evidence to show that Barklow, not Fryar, had stabbed Palmer. The trial judge demurred and instructed the jury at the end of Franklin's direct testimony that the testimony could be used for impeachment purposes only. On January 25, 1994, Fryar was convicted of second-degree murder.

Fryar appealed, arguing that the trial court's refusal to allow mention of Barklow's confession in his opening statement and refusal to permit the use of Franklin's testimony as substantive evidence of his innocence violated Chambers. The SJC rejected his argument, without explicitly discussing the Chambers issue. Commonwealth v. Fryar, 425 Mass. 237, 249-50 (1997) ("Fryar II"). Fryar's petition for a writ of certiorari to the United States Supreme Court was denied on December 5, 1997. Fryar v. Massachusetts, 522 U.S. 284 (1997).

On November 9, 1998, Fryar renewed his Chambers argument in a petition for a writ of habeas corpus under 28 U.S.C. § 2254. The district court reviewed Fryar's habeas claim de novo because

-4-

the SJC did not address Fryar's federal claims, even though Fryar had properly presented them. Fryar III, 185 F. Supp. 2d at 90-91 ("A court can hardly defer to the state court on an issue that the state court did not address."). This was required by circuit precedent. See Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001).

As summarized by the district court, Fryar claimed that "Chambers stands for the proposition that under the Sixth Amendment, a reliable exculpatory out-of-court confession must be admitted substantively, regardless of whether declarant is available." Fryar III, 185 F. Supp. 2d at 91. The court concluded, however, that Chambers was not controlling. Id. at 92. Chambers addressed the right to cross-examination and the right to present witnesses, the district court reasoned, while the instant case concerned a potential violation of the "more amorphous 'right to present a meaningful defense'." Id. The right to present a defense is subject to reasonable restrictions, and "evidentiary exclusions will not violate the constitution so long as they are not arbitrary or disproportionate to the purposes they are designed to serve." Id. (citing DiBenedetto v. Hall, 272 F.3d 1, 8 (1st Cir. 2001)). The district court found the state trial judge's handling of the evidentiary issues raised by Fryar to be "neither 'arbitrary' nor 'disproportionate'." Id.

The district court also noted that, even if the trial judge's evidentiary ruling had been incorrect, any error was, in

-5-

all likelihood, harmless.  "It is almost impossible to imagine that any jury could (a) find petitioner guilty of the murder beyond a reasonable doubt, and (b) simultaneously believe that Barklow lied when he denied confessing to the same murder."  Id. at 94, n.5 (analyzing whether the assumed error had a substantial and injurious effect on the jury's verdict) (citing Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)).  We granted a certificate of appealability on the Chambers issue and now affirm.

## II.  **ANALYSIS**

As before, Fryar contends that the Constitution required Barklow's out-of-court confession to be admitted as substantive evidence.  In Fryar's view, the district court erred in concluding that his constitutional rights were sufficiently safeguarded by the admission of Franklin's testimony for impeachment purposes and his ability to cross-examine Barklow.  Fryar concludes instead that the trial court's rulings skewed the jury's perception of the case from the beginning (as Fryar was not allowed to mention Barklow's confession in his opening statement), and effectively precluded the jury from using the confession in deliberation to corroborate other, substantive, evidence tending to show Fryar's innocence. While we believe Fryar's constitutional claim deserved more serious consideration from the state courts, we disagree with Fryar's conclusions.

We assume arguendo that the state trial court's ruling undermined Fryar's federal constitutional right, as he has argued. Nevertheless, the assumed error was harmless. As the district court observed, a federal habeas court is bound to uphold a state court judgment, notwithstanding trial-type federal constitutional error, so long as that error did not have a "substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 637 (citations omitted). If there was any constitutional error at all in this case, it was trial error. See California v. Roy, 519 U.S. 2, 5 (1996) (emphasizing that the Brecht standard applies to trial-type, not structural, error).

While we are loath to understate the importance of the impeachment/substantive distinction, we are convinced that the distinction would not have made a difference in the outcome of this case. Eyewitnesses testified that Fryar attacked the victim with a stick, a fact to which Fryar also testified. A witness testified that he saw Fryar "punch" the victim, and that immediately after the punch, the victim started bleeding. The knife that was used to kill the victim was found, lying open, a short distance from where Fryar was arrested and taken into custody. Finally, in his second statement to police, Fryar confessed to the stabbing.

We agree with the district court that the jury almost certainly did not find Fryar guilty of murder beyond a reasonable doubt while simultaneously believing that Barklow had lied on the

witness stand when he denied confessing to the murder.  See <u>Fryar</u> <u>III</u>, 185 F. Supp. 2d at 94 n.5.  Both Barklow and Franklin were fully examined and cross-examined in front of the jury.  If the jury believed that Barklow's testimony had been successfully impeached, and that Barklow had confessed to Franklin, this could easily have been the basis for a finding of reasonable doubt.  We can perceive nothing in the state court's rulings that would have interfered with such a result.  Any error was therefore harmless.

**Affirmed.**