Doucette v. Warden, NHSP          CV-02-515-B    10/20/03

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


<u>Christopher Doucette</u>

     v.                                      Civil No. 02-515-B
                                        Opinion No. 2003 DNH 177
<u>Warden, N.H. State Prison, et al.</u>


<u>MEMORANDUM AND ORDER</u>

Christopher Doucette is serving a 37-year-to-life sentence for second-degree murder and conspiracy to murder Leeann Millius. He petitions the court for habeas corpus relief on Sixth and Fourteenth Amendment grounds claiming that the trial court improperly limited cross-examination of the prosecution's principal witness and otherwise excluded evidence that the witness had assaulted Millius approximately three weeks before the murder. He also argues that his appellate counsel was ineffective because he failed to consult with Doucette concerning his appeal. Defendants seek summary judgment.


I.   <u>BACKGROUND</u>

A.  <u>The Murders and The Arrests</u>

The bodies of Millius and her friend Kimberly Farrah were

discovered at a park in Salem, New Hampshire on September 13, 1997. Farrah's body was found in a bathhouse inside the park and Millius's body was discovered along the shore of an adjacent pond. Both women had been stabbed to death.

Farrah's car was recovered later that day and Doucette's wallet and hat were found inside the car. When Doucette appeared at his mother's home in Michigan the next day, she told him that the police wanted to question him concerning the murders. Doucette responded by telling her that he and two friends had been "partying" with the women earlier in the evening but that they had left them unharmed at approximately 4:00 a.m.

Doucette, Eric Jeleniewski, and James Grant were arrested on September 15 at a trailer a few miles from Doucette's mother's home. The three men had broken into the trailer and were wearing shoes or boots that they had taken from the trailer. The police later found three pairs of burned sneakers and several cans of lighter fluid in the woods nearby. Doucette's fingerprint was on one of the cans.

Grant later made a statement implicating himself, Jeleniewski, and Doucette in the murders. The police also determined that Jeleniewski had left a bloody fingerprint on

-2-

Farrah's body and that Grant's watch contained a mixture of blood matching his DNA and Farrah's. All three men were charged with first degree murder. Grant agreed to cooperate with the police and was allowed to plead guilty to a lesser charge. Jeleniewski was convicted of murdering Farrah in a separate trial. Doucette was charged only with Millius's murder.

## B.  Doucette's Trial

### 1.  The Prosecution's Case

The prosecution based its case against Doucette largely on testimony provided by Grant. Grant claimed that he, Jeleniewski and Doucette had left their homes in Massachusetts and traveled to Virginia in the weeks prior to the murders. On September 12, they drove to Millius's home in Derry from Virginia and spent most of the day and evening with her and her friend Farrah. At some point that evening, Jeleniewski told Grant that he wanted to kill both women and that Doucette had agreed to help. Grant claimed that he didn't believe that Jeleniewski was serious but nevertheless told him that he wanted nothing to do with the killings. Later that evening, after Jeleniewski had lured Farrah to the boathouse and stabbed her to death, Grant reluctantly agreed to help Doucette kill Millius because he wanted to prevent

her from becoming a witness against them. According to Grant, Doucette retrieved the knife that Jeleniewski had earlier used to kill Farrah, gave it to him, and held Millius while Grant stabbed her in the throat. The two men then took turns restraining and stabbing Millius until she was dead.

## C. Doucette's Case

Doucette's attorneys conceded that Doucette was in the park when the murders were committed but argued that Grant and Jeleniewski committed the murders on their own. To support their defense, they argued that the physical evidence linked Grant and Jeleniewski to the murders but not Doucette. They also attempted to explain Doucette's behavior after the murders by arguing that he was motivated by fear that he would be falsely implicated in the crimes rather than concern that his involvement would be uncovered. Finally, they argued that Grant lied when he testified at trial that Doucette had participated in Millius's murder.

Doucette's lawyers attacked Grant's credibility on several fronts. They demonstrated that he had made several false statements to the police concerning the crimes - at first claiming that the three men were innocent and then falsely

-4-

claiming that Doucette was the one who had stabbed Millius in the throat.  They argued that his testimony did not make sense in several areas, such as his claim that he had no plan to kill Millius when he took the murder weapon from her room earlier in the day, and his claim that Doucette gave him the knife after Jeleniewski had killed Farrah but then begged Grant not to kill him.  They also argued that Grant was lying about Doucette's involvement in the crimes to escape from the life sentence that he would otherwise have received if he had been convicted of first degree murder.

In a final assault on Grant's version of the murders, Doucette's lawyers attempted to prove that Grant was angry with Millius because she had rejected his advances and, therefore, his real motive for killing Millius was jealousy rather than to conceal Farrah's murder.  Grant admitted during his direct testimony and under vigorous cross-examination that he met Millius the summer before the murders, that he was attracted to her, and that she had spurned his sexual advances.  He acknowledged that he and Millius had quarreled approximately three weeks prior to the murders and that he had sent her a page calling her a "bitch."  He admitted that he was upset that

Millius had been interested in his best friend rather than him. He also acknowledged that he thought that Millius was attracted to Doucette and that the two may have had sex when they disappeared into the woods together a few hours before the murders. Nevertheless, he downplayed his jealousy and claimed that he was no longer upset with Millius when the murders occurred.

## D. The Excluded Evidence

The prosecution moved prior to trial to exclude evidence that Grant had pushed Millius to the ground and bloodied her hands during the argument between them approximately three weeks before the murders. The trial court limited Doucette's right to cross-examine Grant concerning the physical assault and otherwise excluded evidence of the assault pursuant to N.H. R. Evid. 403 because he concluded that the evidence was prejudicial and that Doucette could demonstrate that Grant was angry and jealous without introducing evidence of the physical component of their argument.

## E. Post-Trial Proceedings

After Doucette was convicted, his counsel unsuccessfully

litigated a motion for new trial based on the trial court's exclusion of the assault evidence. Counsel then filed a notice of appeal on his behalf that raised three issues but did not challenge the evidentiary exclusion. Doucette claims that his counsel failed to consult with him concerning the appeal and that he would have directed counsel to appeal the issue if he had been consulted.

After Doucette's conviction was affirmed on appeal, Doucette filed a motion for new trial raising the same issues that form the basis of his present petition. The trial court denied his motion and the New Hampshire Supreme Court rejected his attempt to appeal.

## II. ANALYSIS

Doucette raises two arguments in his habeas corpus petition. First, he claims that the trial court violated his Sixth and Fourteenth Amendment rights by denying him the right to question Grant concerning the assault and by preventing him from proving the assault through extrinsic evidence. Second, he argues that he was denied the effective assistance of counsel because his lawyer failed to consult with him concerning his appeal. I

analyze each claim in turn using the now-familiar standards that govern the review of habeas corpus claims.[1]  Because defendants challenge Doucette's petition in a motion for summary judgment, I construe the record in the light most favorable to him and will enter summary judgment against him only if the undisputed material facts demonstrate that he is entitled to judgment as a matter of law.[2]  See Podiatrist Ass'n, Inc. v. La Cruz Azul de

_____

[1]  A habeas corpus petitioner cannot prevail on an issue of federal law that was previously litigated in state court unless he demonstrates that state court's ruling: (1) "was contrary to" clearly established Supreme Court precedent; (2) "involved an unreasonable application of" such precedent; or (3) was based on "an unreasonable determination of the facts."  28 U.S.C. § 2254(d); cf. Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001) (§ 2254(d) applies only to federal claims adjudicated on merits in state court).  A decision is contrary to Supreme Court precedent if it is "diametrically different" from or "mutually opposed" to such precedent.  Jackson v. Coalter, 337 F.3d 74, 81 (1st Cir. 2003) (quoting Williams v. Taylor, 529 U.S. 362, 407 (2000).  A decision involves an unreasonable application of Supreme Court precedent if it "either unreasonably extends a legal principal . . . to a new context where it should not apply or unreasonably refuses to extend that principal to a new context where it should apply."  Id.  Further, state court fact finding is sacrosanct unless "clear and convincing evidence" demonstrates that the state court resolved the facts incorrectly.  28 U.S.C. § 2254(e)(1).

[2]  Doucette argues that he is entitled to an evidentiary hearing on his claims because factual disputes exist concerning "the timing and nature of the assault, the impact of the evidence of the assault on the jury, and the ineffectiveness of counsel. . . ."  Pet.'s Opp. to Mot. for Summ. J. at 9.  I disagree with

Puerto Rico, 332 F.3d 6, 13 (1st Cir. 2003) (describing summary judgment standard).

## A.   Exclusion of Evidence Claim

A defendant has a constitutional right both to cross-examine the witnesses who testify against him and to present evidence in his own defense.  See Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986); United States v. Scheffer, 523 U.S. 303, 308 (1998). Neither right, however, is absolute.  Instead, trial judges retain broad discretion to impose reasonable limitations on both cross-examination and the presentation of evidence.  See Delaware, 475 U.S. at 679; Fortini v. Murphy, 257 F.3d 39, 46 (1st Cir. 2001).

Here, the trial judge excluded the assault evidence because he determined that other evidence available to Doucette could prove that Grant was angry with Millius and any potential additional probative value of the assault evidence was

_____

Doucette's argument insofar as it bears on his challenge to the exclusion of the assault evidence.  I have accepted Doucette's proffer concerning the timing and nature of the assault and have determined de novo that the trial court's exclusion of the assault evidence was not unreasonable and, in any event, was harmless.  Thus, an evidentiary hearing is not necessary on this issue because the factual disputes Doucette cites are not material to my ruling.

substantially outweighed by the risk that the jury would improperly conclude that Grant had a propensity for violence. While I do not share the trial court's concern about the possible prejudicial effect of the assault evidence, I cannot say that his balancing of probative value and prejudicial effect was unreasonable because, as I will explain, the probative value of the assault evidence was minuscule.

I recognize that evidence that an important prosecution witness had a motive to commit the crime will often be highly probative because such evidence can suggest that the crime was committed by someone other than the defendant. Here, however, Grant admitted that he helped kill Millius and the question before the jury thus was whether he and Jeleniewski had acted alone or with Doucette's help. Given Grant's admission, the value of the assault evidence was largely limited to its usefulness for credibility purposes in contradicting Grant's claim that he was not angry with Millius on the night of the murders. Doucette, however, was allowed to cross-examine Grant extensively concerning his motive to commit the crime and he was successful in eliciting substantial evidence to support his theory that Grant was not truthful when he claimed that he was no

longer angry with Millius.  In light of this evidence, the added value of the assault evidence was minimal.  Thus, the trial court's exclusion of the evidence did not violate Doucette's constitutional rights.

More fundamentally, any error that the trial court committed was harmless.  Claims that a trial judge erroneously limited cross examination or excluded evidence warrant habeas relief only if they had a "substantial and injurious effect or influence in determining the jury's verdict."  Brecht v. Abrahamson, 507 U.S. 619, 631 (1993).  Given Doucette's admission to his mother that he, Grant, and Jeleniewski had been with Millius and Farrah on the evening of the murders and Doucette's incriminating conduct after the crime, the jury had strong evidence to corroborate Grant's testimony that Doucette had helped him kill Millius.  Moreover, given the wide latitude that Doucette was given to attack Grant's testimony on cross examination, the trial court's decision to prevent Doucette from questioning Grant about the assault could not possibly have affected the jury's assessment of Doucette's culpability.  Accordingly, I grant defendants' motion for summary judgment with respect to Doucette's Sixth Amendment claim.

**B.    Ineffective Assistance of Counsel Claim**

An ineffective assistance of counsel claim can only be successful if petitioner shows "(1) that counsel's representation 'fell below an objective standard of reasonableness,' and (2) that counsel's deficient performance prejudiced the defendant." Roe v. Flores-Ortega, 528 U.S. 470, 476-77 (2000), quoting Strickland v. Washington, 466 U.S. 668, 688 (1984). To show prejudice, petitioner must establish that "there [was] a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Petitioner bears the burden of showing both ineffectiveness and prejudice. Scarpa v. DuBois, 38 F.3d 1, 8-9 (1st Cir. 1994).

While Doucette concedes that his appellate counsel filed a notice of appeal on his behalf raising several issues, he faults counsel for failing to consult with him concerning the grounds for his appeal. Whether this alleged failure to consult constitutes a denial of Doucette's right to effective assistance of counsel is unclear. An attorney has a duty to consult with the defendant about the initial filing of a notice of appeal "when there is reason to think either (1) that a rational

defendant would want to appeal . . . or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Roe, 528 U.S. at 480. However, the question of which grounds to raise in the appeal itself is a tactical choice for the attorney, not the client. Smith v. Murray, 477 U.S. 527, 136 (1986) (the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." (quoting Jones v. Barnes, 463 U.S. 745 751,752 (1983)). Whether the duty to consult concerning the filing of an appeal, which was recognized in Roe, also includes a right to consultation concerning the grounds for the appeal is a subject that the parties have not briefed. Further, this potentially difficult legal issue would be moot if, after an evidentiary hearing, I were to determine that counsel consulted with Doucette concerning the possible grounds for an appeal. Thus, rather than attempt to resolve this issue now, I want to obtain a better understanding of the underlying facts. In particular, I would like to know whether counsel completely failed to consult with Doucette concerning his appeal, or instead whether counsel merely failed to specifically discuss whether an

-13-

appeal should be taken from the court's ruling on the assault evidence. Accordingly, I deny defendants' motion for summary judgment with respect to this issue without prejudice and direct the clerk to schedule this matter for an evidentiary hearing concerning Doucette's ineffective assistance of counsel claim. Evidence presented at this hearing shall be limited to whether counsel consulted with Doucette concerning the issues that should be raised on appeal.

## IV. CONCLUSION

For the reasons set forth herein, I grant defendants' motion for summary judgment (Doc. No. 9) with respect to Doucette's exclusion of evidence claim and deny the motion without prejudice with respect to his ineffective assistance of counsel claim.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

October 20, 2003

cc: Thomas J. Butters, Esq.
Ann M. Rice, Esq.
Mark F. Sullivan, Esq.

-14-